## BLOCH v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit.   November 26, 1919.)

### No. 3368.

1. RAILROADS ⊂═5½, New, vol. 6A Key-No. Series—CARRIER UNDER FEDERAL CONTROL AS BAILEE.

Where an interstate shipment was made during the period of government operation and control, the government was bailee of the property during its transportation.

2. CRIMINAL LAW ⊂═304(2)—JUDICIAL NOTICE OF FEDERAL RAILWAY CONTROL.

In a prosecution for receiving goods stolen from an interstate shipment, knowing them to have been stolen, where the shipment was made over an interstate road during the period of government control and operation, the court will take judicial notice of such facts, and that the government was bailee.

3. RECEIVING STOLEN GOODS ⊂═7(5)—SUFFICIENCY OF INDICTMENT AS TO PROPERTY STOLEN FROM INTERSTATE SHIPMENT.

In view of Rev. St. § 1025 (Comp. St. § 1691), which cures all technical defects, indictment charging offense of receiving or having in possession property stolen from an interstate shipment, knowing the same to have been stolen, which alleged that shipment was made over an interstate railroad during period of government control, and set out the name and address of the consignee, the date of shipment, and the number and initial of the car from which the property was stolen, sufficiently alleges ownership.

4. RECEIVING STOLEN GOODS ⊂═7(4)—SUFFICIENCY OF ALLEGATION OF THEFT.

An indictment charging offense of receiving or having in possession property stolen from an interstate shipment, knowing the same to have been stolen, which alleged that the property which was being transported in interstate commerce was stolen from a specified car, is not defective, in that it did not show that the property was taken from the car without the consent of the owner.

5. RECEIVING STOLEN GOODS ⊂═7(1)—SUFFICIENCY OF AVERMENT THAT PROPERTY WAS PART OF INTERSTATE SHIPMENT.

In a prosecution for receiving or having possession of goods stolen from an interstate shipment, knowing that they were stolen, the indictment, in view of Rev. St. § 1025 (Comp. St. § 1691), held to sufficiently allege that the property was part of an interstate shipment.

6. INDICTMENT AND INFORMATION ⊂═110(18)—SUFFICIENCY IN STATUTORY LANGUAGE.

An indictment charging the offense of receiving or having in possession goods stolen from an interstate shipment, knowing the same to have been stolen, need not aver that defendant received and possessed the stolen property with intent to convert it to his own use; Act Feb. 13, 1913 (Comp. St. §§ 8603, 8604), denouncing the offense, which the indictment followed, omitting any reference to intent to convert.

**7.** CRIMINAL LAW ⬥⟾338(4, 5)—EVIDENCE OF FINDING OF STOLEN GOODS.

In a prosecution for receiving or having possession of property stolen from an interstate shipment, knowing it to have been stolen, evidence that 11 of the 37 flasks of quicksilver which were stolen were recovered from the possession of one in New York City *held* admissible, over objection that defendant was not connected by proof with the flasks; it appearing that such flasks bore the same serial numbers as 11 of the flasks in the original shipment, and that they were not transferred by the consignee, etc.

**8.** RECEIVING STOLEN GOODS ⬥⟾3—KNOWLEDGE THAT PROPERTY WAS STOLEN FROM INTERSTATE SHIPMENT.

In a prosecution under Act Feb. 13, 1913 (Comp. St. §§ 8603, 8604), for receiving or having possession of property stolen from an interstate shipment, knowing it to have been stolen, it is immaterial whether defendant knew that the property was stolen from an interstate shipment.

**9.** CRIMINAL LAW ⬥⟾825(4)—NECESSITY OF REQUEST TO CHARGE ON MATTERS OMITTED.

In a criminal prosecution, where there was direct as well as circumstantial evidence, defendant, if dissatisfied with the charge, because it omitted any reference to the subject of circumstantial evidence, must request the court to charge upon such evidence.

**10.** RECEIVING STOLEN GOODS ⬥⟾6—PROSECUTION OF THIEF FOR POSSESSION.

Under Act Feb. 13, 1913 (Comp. St. §§ 8603, 8604), denouncing the offense of receiving or having possession of goods stolen from an interstate shipment, knowing them to have been stolen, the unlawful possession of property stolen from an interstate shipment by the thief falls within the terms of the statute.

**11.** CRIMINAL LAW ⬥⟾800(4)—NECESSITY OF CHARGE DEFINING "THEFT."

The word "theft" necessarily implies a taking from the owner without his consent, and in a prosecution for receiving or having possession of goods stolen from an interstate shipment, knowing them to have been stolen, it was unnecessary for the court to define the word "theft" by informing the jury that it implied a taking from the owner without the owner's consent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Theft.]

**12.** CRIMINAL LAW ⬥⟾721½(2)—RIGHT OF PROSECUTOR TO COMMENT ON FAILURE OF DEFENDANT TO PRODUCE CORRESPONDENCE.

Where defendant took the stand in his own behalf, and during the course of his examination referred to correspondence between himself and one to whom he had shipped goods stolen from an interstate shipment, which he was charged to have received with knowledge that they were stolen, prosecutor may, where he cross-examined defendant as to such correspondence and asked if he objected to producing the same, refer to defendant's failure to produce the correspondence without infringing on defendant's constitutional privilege.

In Error from the District Court of the United States for the Western District of Texas; William R. Smith, Judge.

Herman Bloch was convicted under Act Feb. 13, 1913, of receiving or having in his possession property stolen from an interstate shipment, knowing the same to have been stolen, and he brings error. Affirmed.

C. B. Hudspeth, Volney M. Brown, and Alfred J. Harper, all of El Paso, Tex., for plaintiff in error.

Hugh R. Robertson, U. S. Atty., of San Antonio, Tex., and W. H. Fryer, Asst. U. S. Atty., of El Paso, Tex.

⬥⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WALKER, Circuit Judge, and FOSTER and GRUBB, District Judges.

GRUBB, District Judge. The plaintiff in error was convicted in the District Court for the Western District of Texas of the offense of receiving or having in his possession property stolen from an interstate shipment, knowing the property to have been stolen. The property consisted of 37 flasks of quicksilver shipped from Mendota, Cal., to New York City.

[1-3] The sufficiency of the indictment is questioned for a number of reasons. The indictment is challenged because it does not sufficiently allege the ownership of the quicksilver. The shipment is alleged to have been made over an interstate railroad and during the period of government operation and control. The government was therefore a bailee of the property during its transportation. The court takes judicial notice of this status, and neither averment nor proof of it was required. Again, the designation of the name and address of the consignee, the date of the shipment, and the number and initial of the car from which the property was stolen, would seem to be a sufficient allegation of ownership, so far as the purpose of informing the defendant of the accusation against him, and its nature, required such averment. Kasle v. U. S., 233 Fed. 883, 147 C. C. A. 552. If it was held to be sufficient for that purpose in a case in which the goods were stolen from a railroad station, it would seem to be equally so for all practical purposes when they were alleged to have been taken from an identified railroad car. It would certainly serve to identify the shipment, so as to furnish the defendant the information needed by him to meet the government's case, and to enable him to plead former jeopardy, in the event of a subsequent prosecution for the same transaction. If it did so, it was sufficient to withstand objections, in view of the provisions of section 1025 of the Revised Statutes (Comp. St. § 1691), which cures all technical defects in indictments. In any event the showing of government control and operation of the carrier at the time of the commission of the offense charged contained a sufficient showing of ownership, since possession as bailee was shown to be in the government of the United States.

[4, 5] The indictment is also criticized because it does not allege that the quicksilver was taken from the car without the consent of the owner. It does allege that it was stolen from the car, and this necessarily implies a taking without the owner's consent. It also sufficiently alleges that the quicksilver was part of an interstate shipment. It was not necessary to allege the legal status of the consignee, as to whether it was a partnership or a corporation, or to do more than give the initials and car number of the car from which the shipment is alleged to have been stolen. Kasle v. U. S., 233 Fed. 883, 147 C. C. A. 552. Section 1025, Revised Statutes, cures all technical defects in the indictment, if any exist.

[6] The plaintiff in error cites the case Cohn v. U. S., 258 Fed 356, — C. C. A. —, to the effect that the indictment was fatally defective, because it contained no averment that the defendant received

and possessed the alleged stolen property "with intent to convert it to his own use.". The indictment in the case relied upon by plaintiff in error, however, was framed under section 48 of the Penal Code (Act March 4, 1909, c. 321, 35 Stat. 1098 [Comp. St. § 10215]). That section contains the words alleged to have been improperly omitted from the indictment in this case in the definition of the offense. The indictment in this case was framed under the first section of Act Feb. 13, 1913, c. 50, 37 Stat. 670 (Comp. St. § 8603). The pertinent language of this section is:

"Shall buy, or receive, or have in his possession any such goods or chattels, knowing the same to have been stolen."

The omission of the words contained in section 48 from Act Feb. 13, 1913, distinguishes this case from that of Cohn v. U. S., supra, and from the case of Kirby v. U. S., 174 U. S. 47, 19 Sup. Ct. 574, 43 L. Ed. 890, which was based on an indictment framed under Act March 3, 1875, c. 144, 18 Stat. 479 (Comp. St. §§ 10214, 10215), the language of which is identical with that of section 48 with respect to the intent to convert, and which words are, as we have said, omitted from Act Feb. 13, 1913. The indictment in this case adopts the language of the statute, and we think the use of the statutory language was enough. Receiving or possessing stolen property, knowing it to have been stolen, though the intent was to protect or benefit the thief, instead of the receiver or possessor, might well have been made punishable by Congress, and we think was so. In omitting the words contained in section 48 of the Penal Code, Congress broadened the offense by making the receipt or possession of stolen property punishable for any wrongful purpose, though that purpose was not to convert it to the use of the receiver.

[7] The plaintiff in error objected to proof offered by the government that 11 flasks of quicksilver had been recovered from the possession of J. H. Taft in New York City.. The ground of the objection was that the defendant was not connected by the proof with the 11 flasks. The 11 flasks were shown to have borne the same serial numbers as 11 of the flasks in the original shipment from Mendota, and so were identified as part of that shipment. They must have come into the possession of Taft, either through Haas Bros., the consignees, who received a part of the shipment, or from Hardy, to whom was shipped 36 of the 37 flasks by the defendant either directly or indirectly. The remaining flask never left El Paso. The 37 flasks were shown by the serial number to have been short from the shipment consigned to Haas Bros., and shipped from Mendota. Of the 36 flasks that were reshipped from El Paso to New York, only 25 were found in the possession of Hardy, though the entire 36 had been shipped to him from El Paso, either by the defendant or his vendee. Added to the 25 flasks found and seized in his (Hardy's) possession, the 11 flasks found in Taft's possession would aggregate the exact number shipped from El Paso to Hardy. Identity of number may be a circumstance tending to trace connection.

Again, the record tends to show that the 11 flasks, found in Taft's possession, were replevied by Haas Bros., which excludes the idea that Haas Bros. put Taft in possession of the 11 flasks. The proof connecting the defendant with the 11 flasks may have been slight, but its probative value in the case was equally unimportant. It served only to account for the 36 flasks. The defendant could have been convicted as well because of the receipt or possession of the 25 flasks found at Hardy's alone as because of the receipt or possession of the entire 36 flasks. We think enough connection between the 11 flasks and the defendant appears in the record to have made it proper for the District Judge to have admitted the proof, and to have refused defendant's requested charge that it was not connected, and that it should be disregarded by the jury for that reason.

[8] The plaintiff in error contends that the government was required to show, not only that the defendant knew that the quicksilver was stolen, but that he also knew that it had been stolen from an interstate shipment. A showing that it was part of an interstate shipment is essential only for the purpose of conferring jurisdiction on the federal court. The knowledge of the defendant, or his want of knowledge, cannot affect the question of the court's jurisdiction. When it comes to the question of the defendant's guilt or innocence, that is made to depend by the terms of the act upon his knowledge of its stolen character. Knowledge of its being part of an interstate shipment would not add to or detract from the guilt of the defendant in receiving it. Kasle v. United States, 233 Fed. 883, 147 C. C. A. 552.

[9] The plaintiff in error excepted to the court's charge because it omitted any reference to the subject of circumstantial evidence. If the plaintiff in error was dissatisfied with the charge, because of omitted matter, his remedy was to request the court to charge upon the matter omitted. It could not be reached by an exception. Hughes v. U. S., 231 Fed. 50, 145 C. C. A. 238; Goldsby v. U. S., 160 U. S. 77, 16 Sup. Ct. 216, 40 L. Ed. 343; Isaacs v. U. S., 159 U. S. 487, 16 Sup. Ct. 51, 40 L. Ed. 229; Pennock v. Dialogue, 2 Pet. 1, 7 L. Ed. 327. In this case there was direct, as well as circumstantial, evidence tending to connect defendant with the offense.

[10] The court's charge is also criticized because it does not exclude the idea that the defendant may have been the thief, as well as the possessor of the stolen property. Conceding that the offenses of receiving and stealing are inconsistent, and that one cannot be guilty of both offenses based upon the same transaction, yet the statute also punishes the possession of stolen property, knowing it to have been stolen. It is clear that the unlawful possession of stolen property by the thief is not excluded from the terms of a statute, which punishes the unlawful possession as well as the unlawful receiving of stolen goods. The thief may well be also the unlawful possessor of the property stolen by him.

[11] We think the word "theft" necessarily implies a taking from the owner, and a taking without the consent of the owner, and that an omission of any express statement to this effect from the definition of theft in the court's charge was not erroneous. Nor do we think it

was error for the court not to have imposed upon the government in its charge the burden of showing, not only that the defendant knew that the quicksilver was stolen, but also that he knew it to have been stolen from an interstate shipment; for the reasons before stated.

[12] The identity of the flasks found in New York with those shipped from Mendota, and those received by the defendant at El Paso, and reshipped by him or his vendee to New York, was properly left as a question of fact for the determination of the jury. The plaintiff in error took the stand in his own behalf, and during the course of his examination voluntarily referred to certain correspondence between himself and Hardy, to whom he had shipped the quicksilver, which was had after the seizure of the quicksilver in New York. The United States attorney asked the defendant on cross-examination whether he objected to producing the correspondence referred to. The defendant referred the question to his attorneys for answer. The correspondence was not in fact produced. The United States attorney commented in his argument to the jury on the failure of the defendant to produce it. If the defendant had not submitted himself to cross-examination, the action of the United States attorney would have been reversible error. In that event defendant would have been privileged from producing the correspondence and from being subjected to adverse comment for failure to produce it. Having submitted himself to cross-examination, and having voluntarily referred to the correspondence, he thereby waived his constitutional privilege, and, if on request he failed to produce the letters, the United States attorney was free to comment on his failure. Diggs and Caminetti v. U. S., 242 U. S. 471, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168.

Finding no error in the record, the judgment is affirmed.