OFFICE OF THE ATTORNEY GENERAL OF TEXAS

AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Marvin H. Brown, Jr.
Criminal District Attorney
Fort Worth, Texas

Dear Sir:

Opinion No. O-4291
Re: Is the American National Red
    Cross or the United Service
    Organization an agency or in-
    strumentality of the United
    States Government and thereby
    entitled to sell cigarettes in
    Texas on troop trains without
    payment of the cigarette tax
    levied by Article 7047c, Ver-
    non's Texas Civil Statutes?

        Your letter of December 18, 1941, submits for our opin-
ion the following question, which we quote therefrom:

        "Fort Worth is a large railroad center and there
    are many troop trains through here every day. Under
    government regulations the boys on the trains in move-
    ment cannot leave the cars since they are sealed.

        "It is necessary for them to have some sort of
    refreshment as well as cigarettes on their long jour-
    ney in behalf of our country.

        "The Red Cross together with the United Service
    Organization are planning to establish a canteen ser-
    vice in the railroad yards and to serve coffee and do-
    nuts to the soldiers free of charge and sell them cig-
    arettes, tobaccos and candies at actual costs if they
    so desire to purchase same.

        "We are familiar with Article 7047c-3, Vernon's
    Supplement to Revised Statutes of 1925, known as
    Senate Bill No. 91, passed by the Forty-seventh Legis-
    lature. We interpret the trains as being a part of
    military reservation and we certainly know that the
    Red Cross and United Service Organization are under
    the direct control of the United States Government.

"These Organizations desire to know whether they
can sell cigarettes through this canteen service with-
out the payment of the state tax. This office is of
the opinion that under the law cited above that such
sales can be made free of the tax.

"You must understand that these sales will be
entirely within the railroad yards and the trains will
not come to or near the rail station and the sales
will be made entirely on these Army trains."

An examination of Article 7047c-3, Vernon's Texas Civil
Statutes, cited by you as affording immunity from the cigarette
tax, under the facts before you, convinces us that it does not
operate to create such exemption. A troop train, regardless of its
status as a part of the United States Army, Navy or Marine Corps on
authorized military maneuvers, is clearly not a "post, camp, or
unit exchange" within the purview and contemplation of the exempt-
ing Act, from which we quote the following pertinent portions:

"Section 1. Post, Camp, or Unit Exchanges es-
tablished and operated within the State of Texas, by
or in conjunction with the United States Military,
Naval or Marine forces, on Military, Naval or Marine
Posts, Camps, Stations or Reservations, including any
locality within this State where a cantonment camp is
located and erected, where officers, soldiers, sailors,
nurses, or marines of the United States Army, Navy or
Marine Corps are being trained, are hereby declared to
be, and are recognized for such tax purposes as are here-
inafter set out to be instrumentalities and agencies of
the United States Government.

"Section 2. It is further provided that the pro-
visions of this law shall extend to and apply to any
authorized branch of a post, camp or unit exchange
which may be established for the exclusive benefit of
the officers, soldiers, sailors, nurses or marines in
the Army, Navy or Marine Corps of the United States at
any time that said officers, soldiers, sailors, nurses
or marines shall be on authorized military maneuvers.
It being the express intent of the Legislature by this
Act to allow soldiers, sailors, nurses and marines in
the Army, Navy and Marine Corps of the United States,
to purchase cigarettes, from the camp, unit, or post

exchange without paying the state stamp tax thereon.
It is also expressly provided that this law shall
not be construed as authorizing any person or persons
whatsoever, other than those persons authorized by
Federal Law and Army, Navy or Marine Corps regulations
to purchase cigarettes from a camp, unit, or post ex-
change, or on authorized military maneuvers without
paying the state stamp tax as provided by law thereon.

" * * *

"Section 4.  It is further recognized, declared
and provided that the provisions of Section 2, Chapter
241, Acts of the Regular Session of the 44th Legislature,
with amendements, relating to 'first sale' of cigarettes
does not apply to sales by such post, camp or unit ex-
changes under the conditions specified in the preceding
sections of this law or to sales in accordance with such
specified conditions to such post, camp or unit exchanges
by a licensed cigarette distributor in Texas."

The purpose, nature and plan of operation of "post, camp,
or unit exchanges," expressly made the subject of the above legis-
lation, is fully described in our Opinion No. O-4392, copy of which
we enclose for your information.  We believe you will conclude
therefrom that neither a troop train proceeding under Government
regulation and duly sealed during movement, nor any part of the
United States Army, Navy or Marine Corps on authorized military
maneuvers, nor the American National Red Cross nor the United
States Service Organization is or constitutes a "post, camp or
unit exchange established and operated within the State of Texas,
by or in conjunction with the United States Military, Naval or
Marine forces," etc. under controlling court decisions and War De-
partment regulations, so as to be brought squarely within the scope
and operation of the statute exempting the latter organizations
from the cigarette tax.  Many conceivable organizations, societies
or concessionaires might properly and under due authorization, sell
cigarettes and other taxable commodities within the confines of es-
tablished military posts or reservations or in connection with a
portion of the regular Army, Navy or Marine Corps on authorized
maneuver" or on movement by troop train, without enjoying the im-
munity from state taxation accorded recognized agencies or instru-
mentalities of the Federal Government such as "post, camp or unit
exchanges."  It was the plain intent of the Act under consideration,

as expressed in its caption, "to declare and recognize for certain tax purposes, post, camp or unit exchanges established and operated within the State of Texas, by or in conjunction with the United States Military, Naval or Marine forces to be instrumentalities and agencies of the United States;" and the instant factual situation not falling within such classifications, we must determine, independent of said statute, whether or not the organizations involved are instrumentalities or agencies of the Government so as to be exempt from state taxation under general constitutional principles.

We have no difficulty in holding the American National Red Cross, or any duly organized or existing chapter thereof, to be an agency or instrumentality of the United States Government. Its national status is so established by Title 36, Chapter 1, Sections 1-12 of the United States Code Annotated. By the statutes adverted to "The American National Red Cross" is created a body corporate and politic in the District of Columbia, with the usual corporate incidents, for the purpose of furnishing volunteer aid to the sick and wounded of armies in time of war, in accordande with the spirit and conditions of the Conference of Geneva of October, 1863, and also of the Treaty of the Red Cross, or the Treaty of Geneva of August 22, 1864, to which the United States of America gave its adhesion on March 1, 1882. Moreover, the Secretary of State, the War Department, the Treasury Department and three Presidents of the United States have assumed and recognized the governmental purpose, nature and status of the American National Red Cross. Congress, in addition to enacting measures for its original incorporation and subsequent reincorporation, has, from August 3, 1882, until a recent date, successively and repeatedly appropriated funds for its furtherance and maintenance in some respects. And the courts have joined in this Congressional, executive and and administrative recognition of the national or governmental status of the organization. Grangow vs. United States, 261 Fed. 172; American National Red Cross vs. Felzner Post, 159 N. E. 771.'

But our research has not developed nor have we been furnished any authority or basis, either congressional, administrative or judicial, for holding that the United Service Organization occupies a similar status as a Federal agency or instrumentality so as to enjoy immunity from the burden of state taxation. Your letter does not outline the purpose, nature and plan of operation of the United Service Organization and its various units. But according to information available from other sources, this organization is composed of the Y.M.C.A., Y.W.C.A., National Catholic Council, Jewish Welfare, Travelers' Aid, and the Salvation Army -

all organizations or societies which are, within themselves, existing incidents of civil or religious life, wholly divorced from any notion or status of Federal agencies or instrumentalities. The laudable work and worth of the United Service Organization, of which these various civic and church organizations are component parts, in furnishing the social and recreational facilities and activities so necessary to the sustained morale of our fighting forces, is fully recognized by this department; but absent some legislative, executive or judicial authority conferring upon such Organization the status of an agency or instrumentality of the Government, we are constrained, under the facts at our disposal, to hold that such organization is not of governmental character.

It is accordingly our opinion that the American National Red Cross, as an agency or instrumentality of the Federal Government, is, under principles of constitutional immunity established by the courts, exempt from such state taxation as operates to place a direct burden upon its activities and functions, including the sale by it, of cigarettes on troop trains; but, on the other hand, the United Service Organization, as presently organized and conducted, is not an agency or instrumentality of the Government and does not enjoy such tax immunity.

However, in holding that the American National Red Cross may, under the factual situation, lawfully sell cigarettes, without payment of the cigarette tax levied by Article 7047c, Vernon's Texas Civil Statutes, we do not pass upon the question of whether or not such tax may be lawfully collected on sales by "distributors" of cigarettes, as defined by said Act, to the American National Red Cross within this state.

Trusting the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Pat M. Neff, Jr.
Assistant

PMN:ej